**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JOHN HACKETT,

                Plaintiff,

v.                                                                          CASE NO. 6:20-cv-01225-JAR-GEB

ALL THINGS BBQ, INC. et al.,

                Defendants.

**JOINT MOTION AND MEMORANDUM OF LAW**
**IN SUPPORT OF APPROVAL OF FLSA SETTLEMENT AGREEMENT**

**I.**        **INTRODUCTION**

Plaintiff John Hackett ("Plaintiff") and Defendants All Things BBQ, Inc. ("ATBBQ") and Don Cary ("Defendants") (collectively "the Parties") have settled Plaintiff's claim for unpaid overtime premium under the Fair Labor Standards Act ("FLSA") against Defendants.  The parties now seek the Court's approval of their settlement.  The settlement resolved the claims of Plaintiff.  For the reasons set forth below, the parties jointly request the Court approve the Parties' settlement agreement and dismiss the lawsuit with prejudice.  The Confidential Settlement Agreement and Release of All Claims, Including a Release of Wage and Hour Claims is submitted to chambers separately for *in camera* review.  Plaintiff and Plaintiff's counsel have already received and deposited the settlement checks outlined in the Confidential Settlement Agreement and Release of All Claims, Including a Release of Wage and Hour Claims.  In one of the confidential terms of the Confidential Settlement Agreement and Release of All Claims, Plaintiff affirmed that he has now been paid and fully compensated for all hours worked in his employment at ATBBQ including compensation, wages, overtime wages, overtime premiums, bonuses, commissions, or benefits.

II.     **PLAINTIFF'S ALLEGATIONS AND DEFENDANTS' DEFENSES**

A.     **Plaintiff's Allegations**

Plaintiff filed a complaint on August 20, 2020.  Plaintiff's Complaint alleged failure to pay overtime premium in violation of the Fair Labor Standards Act against All Things Barbecue, Inc., and Don Cary.  Plaintiff requested an award of all unpaid overtime premium due him, an equal amount of liquidated damages, prejudgment and post-judgment interest, attorney's fees, and costs and expenses.

Plaintiff claims he worked approximately 60 hours per workweek on average throughout his employment.  Plaintiff outlined damages as follows: $25,653.85 in overtime premium, an equal amount as liquidated damages, prejudgment interest, and attorneys' fees and costs. Plaintiff calculated this $25,653.85 in overtime premium by taking Plaintiff's annual income of $92,000 (actual salary was $80,000/year, but he was also paid a "truck allowance" as he used his truck in furtherance of Defendants' business, along with various other payments in addition to his salary); dividing that amount by 52 weeks; dividing that amount by 60 hours; dividing that amount by 2 to get the overtime premium; multiplying that amount by 20 hours; and multiplying that amount by 87 weeks, which is the duration of Plaintiff's employment with Defendants. Pursuant to this information, Plaintiff was seeking damages of $25,653.85 in overtime premium plus $25,653.85 in liquidated damages plus attorney's fees and costs. The total of those damages as alleged by Plaintiff are $51,307.70 plus attorney's fees and costs.

Throughout Plaintiff's employment with ATBBQ, his time was heavily focused on installing outdoor kitchens at customers' houses.  A typical job included: Plaintiff and Ryan Marko would visit the customer's house and take pictures and measurements; Ryan Marko would create computer renderings of what the final products would look like after installation;

after the renders were approved by the customer, Joe Phillips and the rest of the ATBBQ engineering department would design the structural framework and various components; Plaintiff and Ryan Marko would then fabricate the components to the specs produced by the engineers; and Plaintiff and Marko would then install the products at the customers' houses.

Throughout the course of Plaintiff's employment with ATBBQ, Cary dictated the manner in which Plaintiff completed his tasks.  Weekly (and sometimes more often than that) Cary would email Plaintiff an "ODK Schedule" (ODK meaning outdoor kitchen), telling Plaintiff what jobs he was going to work on, the specific tasks that he was to perform for each job, and the order in which he was to complete them.

In addition to his outdoor kitchen installation duties, Plaintiff was used as a general handyman.  Plaintiff constructed and set up displays for the ATBBQ retail store.  Plaintiff built shipping crates for products being sent to customers.   Plaintiff shoveled snow, both at the ATBBQ retail store and at Cary's personal residence.  Plaintiff hung Christmas lights at the ATBBQ retail store and at Cary's personal residence.  Plaintiff also worked on landscaping at Cary's personal residence.

Throughout Plaintiff's employment with ATBBQ, he frequently arrived at work by 6:00 a.m. and worked late into the evening.

On or about May 2020, Plaintiff needed some time off for surgery.  The response he received from Cary and ATBBQ was less than supportive.  Plaintiff began to realize that his extreme devotion to his job was never going to really be appreciated or rewarded.   After discussions with his wife, Plaintiff determined that he was no longer interested in working 60+ hours per week.

On June 1, 2020, Plaintiff reached out to Cary, to discuss eliminating his uncompensated overtime work.

> Plaintiff: "I need to talk to you about the 60 average hrs I have worked weekly since my start.  Just conversation need to see if we can get to a 40 hr week."

> Cary: "No problem.  I think we should consider moving you to an 8 to 5 average work day.  We can discuss pay, etc."

> Plaintiff: "Pay cut? Roughly how much are you thinking…"

> Cary: "There's so much more to this conversation than pay.  We need to meet to talk through that.  Not by email or text. . . . Super curious to know what precipitated your desire to move to a 40-hour week?  No problem BTW, I want this to be good for you."

After this exchange, Plaintiff never returned to work.  He was unwilling to accept a pay cut in response to his request to eliminate the uncompensated overtime that he worked every week.

ATBBQ did not track Plaintiff's hours or keep records from which his hours could be exactly reproduced.  But as acknowledged by Cary on June 1, 2020, Plaintiff worked substantial amounts of overtime.  Plaintiff's reasonable estimate of 60 hours per workweek, which was not rebutted by Cary, is a sufficient basis for calculation of damages, particularly in light of ATBBQ's failure to keep statutorily required records.

Plaintiff's job with ATBBQ did not qualify for any exemption from the FLSA overtime premium requirements.  The Defendants asserted the Administrative Exemption and/or Executive Exemption as a basis for paying Plaintiff a flat salary and not compensating him for overtime hours.  The Executive Exemption requires that the employee customarily and regularly direct the work of at least two other full-time employees, and have the authority or substantial weight in the hiring and firing of employees.  Plaintiff didn't supervise anybody and didn't have

4

any say in employment decisions.  The Administrative Exemption requires the employee's primary duty to be the performance of office or non-manual work directly related to the management or general business operations of the employer.  Trying to claim that Plaintiff's job was primarily office or non-manual work is easily rebutted by all documentary evidence produced by any party.  Neither of these exemptions are applicable.

Plaintiff is confident that he would prevail on the merits of his claim for unpaid overtime compensation.  Plaintiff acknowledges that his good faith estimate of 60 hours per week could be contested and a jury could have concluded that he worked either more or less overtime hours. Plaintiff also acknowledges that Defendants could possibly have adduced evidence to show that they acted in good faith and reasonably believed that they were complying with the FLSA, and thereby avoided liquidated damages.

B.    **Defendant's Defenses**

Defendant has the following defenses: Plaintiff is not entitled to overtime pay because the executive or administrative exemptions from overtime pay provided for in Section 13(a)(1) of the FLSA apply to Plaintiff; Plaintiff's Complaint fails to state a claim, in whole or in part, upon which relief may be granted; Plaintiff's alleged damages, to the extent any exist, are speculative and uncertain and therefore not compensable; and Plaintiff's own actions contributed to any damages alleged in the Complaint.

i.    **Executive Exemption to the FLSA**

Plaintiff is not entitled to overtime pay because the executive exemption to the FLSA applies to Plaintiff.  To qualify for the executive employee exemption: (1) the employee must be compensated on a salary basis of not less than $684 per week; (2) the employee's primary duty must be managing the enterprise, or managing a customarily recognized department or

subdivision of the enterprise; (3) the employee must customarily and regularly direct the work of at least two or more other full-time employees or their equivalent; and (4) the employee must have the authority to hire or fire other employees, or the employee's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight.   Plaintiff strongly meets these elements. Plaintiff was paid $1,538.46 per week.   His primary duty was managing the outdoor kitchen installation division.   He regularly supervised Ryan Marko, Justin Guild and Matt Lies.   He made a recommendation to hire Matt Lies and Mr. Cary hired Matt Lies because of Plaintiff's recommendation.

The FLSA defines the word "management" as including but not limited to: "planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; and controlling the flow and distribution of materials or merchandise and supplies."   Plaintiff performed all of these selected management activities.

Plaintiff's primary duty was managing the outdoor kitchen installation project division. Plaintiff was allowed an abundance of freedom, discretion, and independent judgment with respect to how he achieved his primary duty.   Plaintiff managed every step of the outdoor kitchen installation project once the project was booked. He planned the outdoor kitchen installation projects.   He determined the techniques to be used for each project.   He was ATBBQ's highest representative on each job site and he supervised each project and project site, including subcontractors and other ATBBQ employees, until completion of the outdoor kitchen installation project.   Plaintiff determined what types of materials to be used on each project and

determined where to get the materials.  Plaintiff also determined which subcontractors to utilize and hired the chosen subcontractors.

To meet the fourth element, the employee need only be involved in at least one personnel decision.  *Madden v. Lumber One Home Ctr., Inc.,* 745 F.3d 899, 907-08 (8th Cir. 2014). Plaintiff recommended that Don Cary hire Matt Lies.  Don Cary hired Matt Lies because of Plaintiff's recommendation.

*Armitage v. Dolphin Plumbing & Mech., LLC,* 510 F. Supp. 2d 763, 768-771 (Dist. Fl. 2007) is a similar case to Plaintiff's where the court found that the executive exemption applied to a state-licensed master plumber, who was paid a salary to function as a project manager at various job sites.  The court in *Armitage* pointed out that time, alone, is not the sole test to determine if an employee's primary duty is management. *Id* at 770.  The evidence showed that Thomas Armitage performed on balance more management functions than not.  *Id.*  Much like Plaintiff, Mr. Armitage was the person in charge of specified construction projects for Defendants.  *Id.*

### ii.     Administrative Exemption to the FLSA

Plaintiff is not entitled to overtime pay because the administrative exemption to the FLSA applies to Plaintiff.  To qualify for the administrative exemption: (1) the employee must be compensated on a salary basis at a rate not less than $684 per week; (2) the employee's primary duty must be the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

Plaintiff strongly meets these elements.  Plaintiff was paid $1,538.46 per week. Plaintiff exercised his freedom, discretion, and independent judgment to pick the materials for each job, to choose and hire subcontractors, to assign project tasks based on individual strengths, skill-sets and experience, and to supervise each outdoor kitchen installation project.

The management of the outdoor kitchen installation division is non-manual work and it was Plaintiff's primary duty.  His primary duty also included substantial interaction with the employer's customers.  The projects Plaintiff managed were significant because they were the most expensive services/products ATBBQ offers and were with ATBBQ's most important clients.  His primary duty also included extensive interaction with ATBBQ's customers.

      **iii.**    **Plaintiff's Complaint Fails to State a Claim, in Whole or in Part, Upon Which Relief May be Granted.**

Plaintiff did not allege facts in his petition to meet his initial burden to show the amount and extent of work that Plaintiff performed for which he was improperly compensated. "There is little question that damages which are based on conjecture or speculation are not recoverable." *Meissner v. BF Labs, Inc.*, 2014 U.S. Dist. LEXIS 77135, at *5 (Dist. Kan June 6, 2014).  In FLSA cases "where the employer's time records are inaccurate or incomplete," in order for Plaintiff's damages to be compensable and not deemed uncertain and speculative, Plaintiff must meet his burden by showing sufficient evidence to prove as a matter of just and reasonable inference "the amount and extent of that work" that he "in fact performed" "for which he was improperly compensated." In Plaintiff's Complaint, Plaintiff does not meet this burden.  Just making a blanket statement that Plaintiff frequently or always worked in excess of forty hours per workweek does not show the amount and extent of work that Plaintiff performed for which he was improperly compensated.

      **iv.**     **Plaintiff's Alleged Damages, to the Extent They Exist, are Speculative and Uncertain and Therefore Not Compensable.**

No one knows how many hours Plaintiff worked each week, therefore Plaintiff's damages—the overtime premium owed Plaintiff—are speculative and uncertain. "There is little question that damages which are based on conjecture or speculation are not recoverable." *Meissner v. BF Labs, Inc.*, 2014 U.S. Dist. LEXIS 77135, at *5 (Dist. Kan June 6, 2014). In FLSA cases "where the employer's time records are inaccurate or incomplete," in order for Plaintiff's damages to be compensable and not deemed uncertain and speculative, Plaintiff must meet his burden by showing sufficient evidence to prove as a matter of just and reasonable inference "the amount and extent of that work" that he "in fact performed" "for which he was improperly compensated." *Robinson v. Food Services Of Belton, Inc.,* 415 F. Supp. 2d 1227, 1229 (Dist. Kan. 2005) (quoting *Anderson v. Mount Clemens Pottery Co.,* 328 U.S. 680, 687, 90 L. Ed. 1515, 66 S. Ct. 1187 (1946)). Plaintiff will not be able to meet this burden.

      **v.**     **Plaintiff's Own Actions Contributed to Damages Alleged in the Complaint.**

Plaintiff was allowed an abundance of freedom, discretion and independent judgment with respect to how he achieved the primary duty of his job—managing outdoor kitchen installation projects. Plaintiff was allowed to set his own hours because he is paid a salary and is exempt from overtime pay. Plaintiff took advantage of this lack of oversight by spending a significant amount of time on personal matters, including working on personal projects or on side projects not for the benefit of ATBBQ but for ATBBQ customers. The amount of time Plaintiff spent on personal matters and side projects should not be calculated in hours worked by Plaintiff for ATBBQ. For these reasons, the amount of time spent by Plaintiff on Defendant's

premises would not be an accurate accounting of time worked.   Taking this into account, Defendant did not work over 40 hours per week.

Examples of Plaintiff performing work on personal matters during the work-day include: Plaintiff helped himself to ATBBQ supplies to perform repairs and maintenance on his personal truck; Plaintiff emptied a small shop he formerly rented and put all of the items into the Oak Street ATBBQ location to support his tinkering hobby; Plaintiff worked on personal projects and projects not for ATBBQ in ATBBQ's shops; Plaintiff did work for ATBBQ customers on the side; Plaintiff had hobbies he worked on in ATBBQ's shops including anything from RC toys to skateboards; Plaintiff put LED lights on his skateboard; Plaintiff disappeared sometimes in the afternoon to go home, let the dogs out, get lunch and take his meds; and Plaintiff hired Electri-Tech, one of ATBBQ's key sub-contractors, to do some personal work at his home.

III.   **ARGUMENT**

A.   **The Legal Standard for FLSA Court Settlement Approval.**

The legal standard for FLSA court settlement approval is outlined in *Flerlage v. Us Foods,* No. 19-2614-DDC-TJJ, 2020 U.S. Dist. LEXIS 144259, *24-31 (D. Kan. Aug. 12, 2020):

> "When parties settle FLSA claims, they must present the settlement to the court to review and decide whether the settlement is fair and reasonable. *Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-22311-KHV, 2015 U.S. Dist. LEXIS 108821, at *3 (D. Kan. Aug. 18, 2015). 'To approve an FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned.' *Id.*   To approve an FLSA settlement, the court must decide whether: (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties, and (3) the proposed settlement contains an award of reasonable attorneys' fees. *Id*, at *5. . . .
>
> Before approving an FLSA settlement, the parties must submit sufficient information for the court to conclude that a bona fide dispute exists. *McCaffrey v. Mortg. Sources, Corp.,* No. 08-2660-KHV, 2011 U.S. Dist. LEXIS 1096, at *4 (D. Kan. Jan. 5, 2011).   To satisfy this obligation, the parties must provide the

court with: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and, (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.* . . .

The court next considers whether the proposed settlement is a fair and equitable one. 'To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.,* No. 14-cv-00219-KMT, 2014 U.S. Dist. LEXIS 122502, at *3 (D. Colo. Sept. 3, 2014). . . .

The FLSA requires the parties to a settlement agreement to include an award of reasonable attorney's fees and the costs of the action."

## B.    The Litigation Involves A Bona Fide Dispute.

### i.    A Description of the Nature of the Dispute.

A bona fide dispute exists because the parties genuinely disagree on whether the executive or administrative exemptions apply to Plaintiff and the number of hours worked by Plaintiff for ATBBQ.  The claims present a bona fide dispute whether ATBBQ violated the FLSA, with the potential for either side to prevail if the case continued.

As detailed under section Defendant's defenses, ATBBQ believes Plaintiff is not entitled to overtime under the FLSA because the executive or administrative exemption applies to Plaintiff.  Plaintiff does not believe that the executive or administrative exemption applies to Plaintiff.

### ii.    A Description of the Employer's Business and the Type of Work Performed by Plaintiff.

ATBBQ is a local business that sells outdoor barbecue grills, smokers, custom outdoor kitchens with installation, accessories, barbecue tools, outdoor furniture, and barbecue sauces and rubs.  ATBBQ has one location and it is in the Delano district of Wichita, Kansas.  It opened in 2009.

Defendants' description of the type of work performed by Plaintiff follows.  Plaintiff was the manager of the outdoor kitchen installation division at ATBBQ from October 2018 through May 2020.  Plaintiff's primary duty was managing the outdoor kitchen installation projects. Plaintiff was allowed an abundance of freedom, discretion, and independent judgment with respect to how he achieved his primary duty.  Plaintiff set his own hours, was solely in charge of what he did with his time throughout each work day, and possessed a company credit card. Plaintiff's job duties included managing every step of the outdoor kitchen installation project once the project was booked—including planning the project; apportioning the work on the project; determining the types of materials to be used on the project; determining where to get the materials; determining which subcontractors to utilize; hiring the chosen subcontractors; supervising everyone at the project site, including subcontractors and other ATBBQ employees, until completion of the outdoor kitchen installation project.   Plaintiff interacted with the customers of the outdoor kitchen from project initiation to job completion.  He was the head representative of ATBBQ on the job site.  At one time or another during his employment managing outdoor kitchen installation projects, Plaintiff supervised ATBBQ employees Ryan Marko, Justin Guild, and Matt Lies.  Plaintiff employed discretion to deviate from ATBBQ policy such as when he chose custom materials and sizes for projects.

Plaintiff describes the type of work he performed as manual outdoor kitchen installation and all-purpose handyman tasks, both at ATBBQ's premises and Cary's personal residence, including landscaping and hanging Christmas lights.  Plaintiff was told what to do, what order to do it in, and where to do it.  Plaintiff did not supervise any employees and he never made (or was solicited to make) decisions regarding hiring or firing of employees.

### iii.    ATBBQ's Reasons for Disputing Plaintiff's Right to Overtime.

As detailed under section Defendant's defenses, ATBBQ believes Plaintiff is not entitled to overtime under the FLSA because the executive or administrative exemption applies to Plaintiff.  If neither exemption applies, Plaintiff's estimate of hours worked for ATBBQ is too high because Plaintiff's hours worked should be reduced by subtracting the time Plaintiff spent on personal projects, side-projects he hid from ATBBQ, and personal, sick, and vacation time. Neither Plaintiff nor Defendants kept track of how many hours Plaintiff worked for ATBBQ. Plaintiff spent a significant amount of time on personal projects such as putting LED lights on his skateboard and playing with RC toys (remote control). He also spent a significant amount of time on construction projects which he did not tell ATBBQ about and did not pay ATBBQ for. For these side-projects he would even utilize customers he connected with through ATBBQ.  He also took a significant amount of time off and during the middle of most days he would go home to be with his dogs.

Plaintiff requested personal/vacation time or received holiday time during the following 15 weeks: week of November 19, 2018; week of December 24, 2018; week of December 31, 2018; week of May 27, 2019; week of July 1, 2019; week of September 2, 2019; week of November 25, 2019; week of December 23, 2019; week of December 30, 2019; week of January 27, 2020, week of March 9, 2020, week of March 16, 2020, week of March 23, 2020, week of April 27, 2020, and week of May 4, 2020.

### iv.    The Employee's Justification for the Disputed Wage.

Plaintiff claims he worked approximately 60 hours per workweek on average throughout his employment with ATBBQ and the executive and administrative exemptions do not apply to Plaintiff.

C.     **The Settlement Agreement is Fair and Reasonable.**

The Confidential Settlement Agreement and Release of All Claims, Including a Release of Wage and Hour Claims is fair and reasonable because it provides adequate compensation to the employee and does not frustrate the FLSA policy rationales.  In the settlement agreement, Plaintiff is adequately compensated because the settlement agreement takes into account: (1) Plaintiff's $80,000 annual salary with ATBBQ; (2) the probability the executive or administrative exemption applies to Plaintiff, or that Defendants would avoid an award of liquidated damages by showing they had a good faith belief that such exemptions applied; (3) the number of hours Plaintiff claims he worked for ATBBQ; (4) the number of hours that Defendants contend Plaintiff spent on personal projects, side-projects he hid from ATBBQ, and personal, sick, and vacation time; (5) that ATBBQ, is a local business that does not have insurance that covers Plaintiff's claims; and (6) ; and Plaintiff's attorney's fees and costs.

D.     **The Settlement Agreement Includes an Award of Reasonable Attorney's Fees and the Costs of the Action.**

The amount of attorney's fees included in the Confidential Settlement Agreement and Release of All Claims, Including a Release of Wage and Hour Claims is reasonable.  The amount of attorney's fees takes into account the stage of the litigation before settlement was reached.    Plaintiff's counsel: responded to the Court's Interrogatories; directed Interrogatories and Requests for Production of Documents to Defendants; prepared responses and answers to Defendants' Interrogatories and Requests for Production of Documents; reviewed and analyzed over 5,000 pages of documents produced by Defendants, including over 4,000 pages of emails; participated in mediation; negotiated the Confidential Settlement Agreement and Release of All Claims Including a Release of Wage and Hour Claims; and

reviewed, revised, and negotiated the contents of this Joint Motion.   At the time of settlement, no depositions had yet taken place.

## IV.   **CONCLUSION**

As the parties have already settled Plaintiff's claims, there is no basis for this litigation to move forward.  For the reasons set forth above, the Parties respectfully request that the Court approve the Parties' Confidential Settlement Agreement and Release of All Claims, Including a Release of Wage and Hour Claims which is sent to chambers separately for *in camera* review.

/s/ Nathan Elliott (w/consent)
Sean M. McGivern, KS # 22932
Nathan R. Elliott, KS # 24657
GRAYBILL & HAZLEWOOD, LLC
218 N. Mosley
Wichita, Kansas 67202
Telephone:   316-266-4058
Facsimile:   316-462-5566
sean@graybillhazlewood.com
nathan@graybillhazlewood.com

*Attorneys for Plaintiff*

/s/ Alan Rupe
Alan L. Rupe, KS # 10861
Mitch J. Spencer, KS # 27570
LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, Kansas 67206
Telephone:   316-609-7900
Facsimile:   316-462-5746
alan.rupe@lewisbrisbois.com
mitch.spencer@lewisbrisbois.com

*Attorneys for Defendant*